**KREIDER DAIRY FARMS, INC.,**
A Pennsylvania Family Farm
Corporation, Appellant,

v.

Ann M. **VENEMAN,** Secretary of the
United States Department of
Agriculture.

No. 04–3369.

United States Court of Appeals,
Third Circuit.

Argued on May 24, 2005.

Decided July 28, 2005.

Marvin Beshore [Argued], Harrisburg, PA, for Appellant Kreider Dairy Farms, Inc., A Pennsylvania Family Farm Corporation.

Michael S. Raab, Mark R. Freeman [Argued], U.S. Department of Justice, Civil Division, Appellate Staff, Washington, DC, for Appellee Ann M. Veneman, Secretary

of the United States Department of Agriculture.

Before SCIRICA, Chief Judge, ALITO and RENDELL, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Appellant, Kreider Dairy Farms, appeals the District Court's grant of summary judgment for the Secretary of the Department of Agriculture, contending that it was entitled to producer-handler status under 7 C.F.R. § 1002 (Order 2)[1] and, thus, should have been exempt from paying the fluid milk fees otherwise due to the United States Department of Agriculture's Order 2 Market Administrator (MA) from and after November 1991.[2] The District Court based its grant of summary judgment on the grounds that Kreider failed to file a second application and was, therefore, not entitled to any relief. Kreider now appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kreider Dairy Farms is a Pennsylvania family farm corporation. Its farming enterprise includes land, equipment, buildings and dairy cattle through which it produces, processes, packages and distributes fluid milk products at wholesale and retail.

In 1986, Kreider agreed to produce Kosher fluid milk products for the Foundation for the Preservation and Perpetuation of the Torah Laws and Customs, Inc. of Baltimore, Maryland (the "FPPTLC"). Those transactions resulted in the FPPTLC acquiring and distributing Kreider-produced kosher fluid milk products in the Baltimore area. In 1990, the FPPTLC, acting as a broker, began ordering additional volumes of kosher milk products from Kreider for delivery to Ahava Dairy Products, Inc., a kosher milk products distributor in New York City. Kreider soon began dealing directly with Ahava, delivering products to the Ahava distribution warehouse in Brooklyn. Kreider also continued to supply the FPPTLC for its uses at various locations, including locations in the State of New Jersey, which were part of the New York–New Jersey Marketing area. In turn, FPPTLC and Ahava would then redistribute the kosher milk obtained from Kreider in the New Jersey–New York area (the Order 2 area).

In December 1990, the Order 2 Market Administrator notified Kreider that its sales to Ahava might subject it to monthly milk fees to be paid into the producer-settlement fund, so Kreider filed the appropriate application in January 1991 in an attempt to prove that it was an exempt producer-handler. From January 1991

1. Order 2 was terminated and superseded by Order 1 (7 C.F.R. § 1001) on January 1, 2000, but remained in effect at all times relevant to Kreider's 1998 petition.

2. The Agricultural Marketing Agreement Act of 1937 authorizes the Secretary of Agriculture to issue marketing orders establishing "milk pools" for particular geographic regions. Each order provides a uniform price to be paid to dairy farmers ("producers") from downstream processors and distributors ("handlers") in that pool. See 7 U.S.C. § 608c(1). Under Order 2, this goal was accomplished by creating a special "producer-settlement fund" managed by the MA. Each

month, every handler would pay money into, or draw money from, this fund in amounts dependent upon the proportion of his milk that is sold in the more profitable fluid form. Producers would receive a "blended price" that reflected the weighted average value of all milk sold within the area covered by that pool. Producer-handlers, small dairy farms that produce, process and distribute their own milk at their own risk, without drawing on the pool to cover their production needs or relying on the pool to sell their surpluses, are generally exempted from paying such fees. See Lehigh Valley Farmers v. Block, 829 F.2d 409, 411–12 (3d Cir.1987).

through December 1999, Kreider filed, as requested, monthly reports with the Market Administrator which detailed its sales to Ahava, the FPPTLC and all other customers.

In August 1992, the Market Administrator for Order 2 notified Kreider that its sales of fluid milk products to Ahava caused it to be regulated as a handler operating a partial pool plant and, on that basis, Kreider was billed in excess of $100,000 in fees on account of deliveries going back to November 1991. After this initial billing, Kreider was billed monthly by the Order 2 Market Administrator. The bills at issue here totaled $244,977.97 from December 1995 to December 1999. Kreider ceased its dealings with Ahava in April 1997.

In December 1993, Kreider filed a petition challenging the MA's determination that Kreider was a handler regulated by Order 2 and liable to pay fees to the producer-settlement fund. This initiated Kreider I. The Judicial Officer ("JO") dismissed the petition, based on the MA's determination that Kreider was not eligible for producer-handler status because it sold milk to two subdealers (Ahava and FPPTLC).

On October 18, 1995, Kreider filed a Complaint pursuant to the Agricultural Marketing Agreement Act in the District Court challenging the JO's decision. On August 14, 1996, the District Court denied the parties' motions for summary judgment and remanded the case for further administrative findings as to whether Kreider was "riding the pool."[3]

On August 12, 1997, on remand, the ALJ held a hearing and issued a decision that Kreider was "riding the pool" and, therefore, was not entitled to producer-handler status. Kreider did not timely appeal this decision and the decision of the ALJ became final.

On February 17, 1998, Kreider filed a new petition for review, this time directly with the ALJ. The new petition (which we will call Kreider II) sought a refund of Kreider's payments to the producer-settlement fund from December 1995 through December 1997. Kreider subsequently filed an amended petition which expanded the time period under review to December 1999.

On May 31, 2002, the ALJ dismissed that portion of Kreider II which pertained to the time period May 1997–December 1999 because Kreider had failed to reapply for producer-handler status and, therefore, the petition was not ripe, and, in the alternative, because it would not have been contrary to law for the MA to deny any such application on the merits based on Kreider's ongoing sales to subdealers.

On August 5, 2003, the JO affirmed this decision and held that Kreider's January 1991 application for designation as a producer-handler did not constitute an application for designation as a producer-handler for the period from December 1995 through December 1999 and, therefore, because such an application was a prerequisite, Kreider's petition for review was premature. In the alternative, the JO also

---

**3.** While it is not important for our purposes, "riding the pool" refers to the circumstance in which an entity such as Kreider is able to reap the advantages of the stability provided by the regulatory program by failing to exercise complete and exclusive control over its distribution so that those to whom it distributes fluid milk (in this case Ahava and FPPTLC) can purchase pool milk whenever Kreider cannot meet their demands. Therefore, Kreider would potentially be able to rely on pool milk to provide milk to its customers when its supply was insufficient, without contributing money to the producer-settlement fund.

held that Kreider would not have been entitled to producer-handler status for the time period from May 1997 through December 1999.

On August 22, 2003, Kreider filed a complaint in the District Court seeking judicial review of the August 5, 2003 decision. The District Court granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment, confirming the procedural irregularity relied upon at the administrative level. Kreider now appeals.

### JURISDICTION

The District Court had jurisdiction pursuant to 7 U.S.C. § 608(c)(15)(B), 28 U.S.C § 1331 and 28 U.S.C. § 1337. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

### DISCUSSION

Kreider contends that the District Court's conclusion that the filing of a second application was a prerequisite to court review of Kreider's 1998 Petition was in error because (1) Kreider had filed a 1991 application, which was the subject of the 1998 Petition; (2) Kreider's monthly reports, as well as its having contested the Agency's refusal to consider it a producer-handler, fulfilled any requirement that it "apply" in order to be viewed as seeking producer-handler status; and (3) Kreider's filing of an application would have been futile since the Agency clearly was unwilling to modify the position it adopted in 1993 that sales to subdealers disqualified Kreider from producer-handler status.[4]

■ Kreider first contends that its 1991 application was the subject of the 1998

Petition and, therefore, no other application was necessary.

Kreider's amended 1998 Petition read:

This petition is filed specifically to challenge all payments made and charges levied within the two years preceding the filing of this Petition (prior to its amendment), and all payments which were incurred until Order 2 was terminated and superceded on January 1, 2000.

In the original application, Kreider reported its milk production for the period beginning December 1989 and ending January 1990. Thus, the 1998 Petition, although filed to preserve the right to protest payments made from December 1995 to December 1999 *should the prior petition be resolved other than on the merits,* covered a different time period from the original application. The original application was resolved on the merits by the August 12, 1997 decision of the ALJ that Kreider was not entitled to producer-handler status, which Kreider later untimely (and, thus, unsuccessfully) appealed. Therefore, the new petition could not possibly be construed to relate to the original application.

■ Kreider next argues that any obligation it had to re-apply was fulfilled by its monthly filing of reports of receipts and utilization which disclosed its entitlement to that status on the face of the report. Kreider contends that the acts of reporting its operations and contemporaneously litigating the legal implications of those distributions were the functional equivalent of presenting the application for designation as a producer-handler on a different form.

Again, Kreider's argument fails. Order 2 specifically required an application "on

---

4. Because we will affirm the Order of the District Court based on the fact that Kreider was required, and failed, to file a second application for producer-handler status, we

do not reach the issue of whether Kreider would have been entitled to such status had a second application been filed.

forms prescribed by the market administrator" containing, at a minimum, the information described in the regulation. *See* 7 C.F.R. § 1002.12(a). Under 7 C.F.R. § 1002.30, the monthly reports Kreider filed only had to contain the quantity of milk received, inventoried and distributed each month, as well as a computation of its payment obligations. This is not the same information required, under 7 C.F.R. § 1002.12, to be placed in an application for producer-handler status and, given the deference we afford to the agency, there is nothing to suggest that these reports should have been, much less, had to have been, accepted in lieu of an application. *See Thomas Jefferson University v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (holding that "agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." (internal quotations and citations omitted)).

■ Finally, Kreider argues that it did not have to exhaust administrative remedies in this case because such exhaustion would have been futile since the Agency adopted the position that sales by a producer-handler to a subdealer serve to disqualify an entity from producer-handler status. (Appellant's Br. at 23) "The doctrine of exhaustion of administrative remedies requires that parties first use all prescribed administrative measures for resolving a conflict before they seek judicial remedies." *Facchiano v. United States Dept. Of Labor,* 859 F.2d 1163, 1166 (3d Cir.1988). However, this doctrine does not fit the facts of this case. Kreider's petition *was* reviewed by both the ALJ and the JO. Additionally, the reason that the Petition was originally denied by the ALJ, at least in part, was that "Kreider Dairy's January 1991 filing of its 'Application for Designation as Producer–Handler' did not constitute an application for producer-handler status for the period May 1997 through December 1999." There-

fore, the Petition was not dismissed because Kreider failed to exhaust its administrative remedies, but, rather, because it failed to meet a condition precedent to even filing such a Petition—applying to the MA for producer-handler status.

Additionally, even if the situation can be viewed in terms of failure to exhaust administrative remedies, the futility exception does not apply here. For, Kreider should not have just assumed that a new application to the MA would have been futile, especially for the period during which Kreider had ceased distributing milk through Ahava. Because of changed circumstances, the MA's denial of the 1991 petition and the subsequent litigation did not give Kreider a legitimate basis on which to conclude that any further applications would be futile. Even though Kreider was still supplying at least one subdealer after April 1997 (FPPTLC), given the cessation of its dealings with Ahava, it is not clear that re-application would have been utterly futile.

Therefore, we will AFFIRM the Order of the District Court.